UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KAREN JO YOUNG, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 1:19-cv-00202-GZS |
| ) | |
| MAINE COAST REGIONAL ) | |
| HEALTH FACILITIES, et al., ) | |
| ) | |
| Defendants ) | |

**ORDER ON DISCOVERY ISSUES**

In this action, Plaintiff alleges Defendants unlawfully terminated her employment in part in retaliation for activity protected under the Americans with Disabilities Act. This matter is before the Court on two discovery-related issues: (1) whether communications between Defendants' representatives and counsel are protected from discovery under the attorney-client privilege, and (2) whether the scope of Plaintiff's proposed deposition of Defendant Maine Coast Regional Health Facilities (the Hospital) is overbroad.

**FACTUAL BACKGROUND**

In September 2017, a local newspaper published a letter from Plaintiff, in which letter Plaintiff expressed her view on certain issues regarding the management of the Hospital. According to Defendants, after reading the letter, John Ronan, the president of the Hospital, decided to terminate Plaintiff's employment unless there was a legal impediment to doing so. The specific concern was whether Plaintiff had engaged in concerted, protective activity in violation of the National Labor Relations Act. One of Defendants' employees then contacted legal counsel to determine whether there was a legal

impediment to the termination of Plaintiff's employment. After the communication with counsel, Defendants terminated Plaintiff's employment.

Defendants contend they terminated Plaintiff's employment due to the content of the letter. As part of their effort to demonstrate that the decision to terminate Plaintiff's employment was neither discriminatory nor retaliatory and that the stated reason for the termination was not pretextual, Defendants will likely reveal that counsel was consulted before Plaintiff's employment was terminated. Defendants do not assert the decision was based on the advice of counsel and Defendants do not intend to disclose the content of the communication with counsel.

## DISCUSSION

### A. Attorney-Client Privilege

Through discovery, Plaintiff asked Defendants to produce copies of the communications between Defendants' representatives and counsel prior to the termination of Plaintiff's employment. Defendants object to the production of the documents, citing the attorney-client privilege. Plaintiff argues that Defendants waived the privilege and that Defendants have placed the communications at issue as part of their defense.

Federal Rule of Evidence 501 defines, in the first instance, the application and scope of the attorney-client privilege. The Rule provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
> • a federal statute; or
> • rules prescribed by the Supreme Court.

>But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. As the Rule reflects, where state law applies to the claim or defense, the privilege would likely be governed by state law. In this action, Plaintiff asserts both state and federal claims. Because federal law governs one of the principal claims in this case, federal common law controls Defendants' assertion of the attorney-client privilege. *Marshall v. Spectrum Med. Grp.*, 198 F.R.D. 1, 2 (D. Me. 2000). *See also Swidler & Berlin v. United States*, 524 U.S. 399 (1998) (developing the federal common law attorney-client privilege in the context of a motion to quash a federal grand jury subpoena); *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (same, motion to quash IRS summons); *Green v. Fulton*, 157 F.R.D. 136, 139 (D. Me. 1994); Fed. R. Evid. 501.

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "By safeguarding communications between attorney and client, the privilege encourages disclosures that facilitate the client's compliance with law and better enable him to present legitimate arguments when litigation arises." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011). However, "the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). A relatively narrow construction is appropriate

because the privilege "comes with substantial costs and stands as an obstacle of sorts to the search for truth." *Id.*

The attorney–client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro,* 284 F.3d at 245 (quoting 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).

As the party invoking the privilege, Defendants "must show both that it applies and that it has not been waived." *Lluberes,* 663 F.3d at 24. "The privilege can be waived when the privileged material is disclosed, or when a party seeking the privilege has affirmatively placed the subject matter of the privilege in issue for its own benefit." *Open Software Foundation, Inc. v. U.S. Fidelity & Guar. Co.,* 191 F.R.D. 325, 327 (D. Mass.) (internal citations omitted).

Here, although Defendants maintain that they do not intend to present the substance of the communications at trial, they expect to explain the process they followed, including the fact that they consulted counsel, to refute Plaintiff's contention that the stated reason for the termination was pretextual. In support of her claim of pretext, Plaintiff intends to demonstrate that Defendants did not terminate the employment of other employees who wrote a letter critical of the Hospital, which letter was also published in the local newspaper. Defendants maintain that the other employees were not similarly situated to

Plaintiff and thus are not "comparators" for assessing Defendants' decision to terminate Plaintiff's employment.

Regardless of whether counsel advised Defendants on the ultimate issue (i.e., whether Defendants had grounds to terminate Plaintiff's employment) and regardless of whether the other employees are deemed to be "comparators," when Defendants reveal that the Hospital consulted counsel before Plaintiff's employment was terminated, the implication is that counsel did not perceive a legal impediment to the termination (i.e., Plaintiff's conduct did not constitute concerted, protected activity). Defendants' communication with counsel would thus be in issue for Defendants' benefit. Plaintiff should have access to the communications to assess whether a challenge to the implication is warranted.

Accordingly, unless Defendants can demonstrate that the fact of the Hospital's consultation with counsel will not be revealed at trial, including in response to Plaintiff's pretext assertion, Plaintiff would be entitled to the communications between Defendants' representatives and counsel on September 21, 2017 (prior to the termination of Plaintiff's employment) as to whether Plaintiff's conduct constituted a concerted, protective activity.

### B. Corporate Deposition

Through a notice to take Defendants' deposition in accordance with Federal Rule of Civil Procedure 30(b)(6), Plaintiff seeks to depose a person or persons with knowledge of the staffing levels at the Hospital for a period before and after the termination of Plaintiff's employment. Defendants contend that the requested topics seek discovery that is irrelevant to the decision to terminate Plaintiff's employment. Defendants argue the relevant inquiry

5

is the decision-maker's (Mr. Ronan's) understanding of the staffing levels and not the actual staffing levels.

While Mr. Ronan's knowledge might be relevant to an assessment of Defendants' liability, the actual staffing levels are not irrelevant. Neither Plaintiff nor the fact finder is required to accept Mr. Ronan's assertion as to his knowledge of staffing levels. Plaintiff should have an opportunity to challenge Mr. Ronan's assertion. Without information regarding the actual staffing levels, Plaintiff's ability to do so would be unreasonably compromised.

Plaintiff's request, however, is overly broad. Plaintiff can reasonably expect Defendants to produce a witness or witnesses to testify as to the staff levels at the Hospital for approximately six months prior to the termination of Plaintiff's employment. Specifically, Defendants shall produce a witness or witnesses to testify as to (a) the staffing levels at the Hospital from April 1, 2017, to September 21, 2017, and (b) any measures initiated by the Hospital from April 1, 2017, to September 21, 2017, to address the staffing levels.

## CONCLUSION

Based on the foregoing analysis, the Court orders:

1. Unless within fourteen (14) days of the date of this order, Defendants demonstrate, through a motion to reconsider, that the fact of the Hospital's consultation with counsel will not be revealed at trial, including in response to Plaintiff's pretext assertion, Defendants shall produce all documents that comprise or reflect the communications between Defendants' representatives

6

and counsel on September 21, 2017 (before the termination of Plaintiff's employment), as to whether Plaintiff's conduct constituted concerted, protective activity.

2. Defendants shall produce a witness or witnesses for a deposition in accordance with Federal Rule of Civil Procedure 30(b)(b)(6) to testify as to (a) the staffing levels at the Hospital from April 1, 2017, to September 21, 2017, and (b) any measures initiated by the Hospital from April 1, 2017, to September 21, 2017, to address the staffing levels.

## **NOTICE**

Any objections to this order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 27th day of April, 2020.